# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Hewlett-Packard Company, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civ. A. No. 4:18-00762 |
| | § | |
| Quanta Storage, Inc. and | § | |
| Quanta Storage America, Inc. | § | |
| | § | |
| *Defendants*. | § | |

## JURY CHARGE

Instruction No. 1

**GENERAL CHARGE TO THE JURY**

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not

evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.

Plaintiff Hewlett-Packard Company has the burden of proving its case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so. If you find that plaintiff has failed to prove any element of its claim by a preponderance of the evidence, then it may not recover on that claim.

The fact that a company brought a lawsuit and is in court seeking damages creates no inference that the company is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence. One is direct evidence, such as testimony of an eyewitness. The other is indirect or circumstantial evidence. Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

In weighing the credibility of a witness, you may consider the fact that he or she has previously been convicted of a felony. Such a conviction does not necessarily destroy the witness's credibility, but it is one of the circumstances you may take into account in determining the weight to give to his or her testimony.

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the

circumstances. Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides. Witness testimony is weighed; witnesses are not counted. The test is not the relative number of witnesses, but the relative convincing force of the evidence. The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

You have heard and/or shall consider testimony from Shang Hao ("Haw") Chen, Shu Ming Tzeng, and Ya-Ping ("Sally") Huang refusing to answer certain questions about his or her work for Quanta Storage, Inc. or Quanta Storage America, Inc. Mr. Chen and Ms. Tzeng were employees of Quanta Storage Inc. during the relevant time. Ms. Huang was an employee of Quanta Storage America, Inc. while she lived in the United States, and was employed by Quanta Storage, Inc. while she lived outside the U.S. They each refused to answer certain questions on the grounds that his or her answers might be incriminating. A witness has a constitutional right to decline to answer on the grounds that their answer might incriminate them.

You may, but are not required to, infer by the witness's refusal to answer that the answers to the questions posed would have been adverse to Quanta Storage, Inc. and/or Quanta Storage America, Inc.'s interests. You may not base your verdict solely on that adverse inference.

Certain testimony has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers have been shown to you during trial. This deposition testimony is entitled to the same consideration and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

A typewritten transcript of an oral conversation, which can be heard on a recording received in evidence as Exhibits 340-357 was admitted. The transcripts also purport to identify the speakers engaged in such conversation. I have admitted the transcripts as Exhibits 340-357 for the limited and secondary purpose of aiding you in following the content of the conversation as you listen to the recording, and also to aid you in identifying the speakers.

6

You are specifically instructed that whether the transcripts correctly or incorrectly reflect the contents of the conversations or the identity of the speakers is entirely for you to determine, based on your evaluation of the testimony you have heard about the preparation of the transcripts and on your own examination of the transcripts in relation to your hearing of the recordings themselves as the primary evidence of their own contents. If you should determine that the transcripts are in any respect incorrect or unreliable, you should disregard them to that extent.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

Certain parties are no longer involved in this litigation.  As jurors, it is your duty to consider the issues among the remaining parties. Do not concern yourself with the fact that companies which were discussed during the trial are not parties to this lawsuit.

Instruction No. 2

## PARTIES AND CLAIMS

In these instructions, I will refer to the Plaintiff Hewlett-Packard Company as "plaintiff." I will refer to the Defendants Quanta Storage, Inc. and Quanta Storage America, Inc. as "defendants."

Although there are two defendants in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, both defendants are liable. Each defendant is entitled to a fair consideration of the evidence. Neither defendant is to be prejudiced should you find against the other. All instructions I give you govern the case as to each defendant. In considering a claim against a defendant, you must not consider evidence admitted only against the other defendant.

In this case, plaintiff alleges that defendants violated the federal antitrust laws by entering into a conspiracy that unreasonably restrained trade, and by engaging in price-fixing.

Defendants deny that they have engaged in any unlawful conduct or in any way violated the federal antitrust laws.

Instruction No. 3

## PURPOSE OF ANTITRUST LAWS

This case involves alleged violations of a federal antitrust law called the Sherman Act. The purpose of this antitrust law is to preserve free and unfettered competition in the marketplace. The law rests on the central premise that competition produces the best allocation of our economic resources, the lowest prices, the highest quality, and the greatest material progress.

Instruction No. 4

## THE SHERMAN ACT

The Sherman Act prohibits contracts, combinations, or conspiracies that unreasonably restrain trade in interstate commerce. Any agreement between or among competitors to fix, raise, or stabilize prices constitutes an unreasonable and illegal restraint of trade under the Sherman Act.

Instruction No. 5

## ELEMENTS – CONSPIRACY TO FIX PRICES

Plaintiff claims that it was injured because defendants participated in an agreement to fix or stabilize the prices of optical disk drives.  To prevail against defendants on this price-fixing claim under the Sherman Act, plaintiff must prove, as to defendants, each of the following elements:

(1) That an agreement or agreements to fix or stabilize the prices of optical disk drives existed among competing sellers of those drives;

(2)  That defendants knowingly participated in such an agreement to fix or stabilize prices;

(3) That such an agreement occurred in, or affected, interstate commerce; and

(4) That the agreement in which defendants participated caused plaintiff to suffer an injury to its business or property.

Instruction No. 6

**EXISTENCE OF A CONSPIRACY**

An agreement between two or more competitors exists when they share a commitment to a common scheme. To establish the existence of an agreement, the evidence need not show that the competitors entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can participate in a price-fixing agreement without full knowledge of all of the details of the overall agreement, the identity of all the participants, or the parts each participant plays in the agreement  Participants in a price-fixing agreement need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove an agreement existed, the evidence must show that the participants in the agreement came to an understanding among themselves to accomplish a common purpose.

10

An agreement may be formed without all participants coming to an agreement at the same time. Similarly, it is not essential that all participants acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by plaintiff were agreed upon to carry out the agreement, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all alleged participants were actually participants. It is the agreement to fix or stabilize optical disk drive ("ODD") prices that constitutes the pertinent agreement. You may find an agreement existed even if it did not succeed in all particulars.

Plaintiff may prove the existence of the agreement through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the agreement.

Direct evidence of an agreement may not be available, and, therefore, an agreement may also be shown through circumstantial evidence. You may infer the existence of an agreement from the circumstances, including what you find the participants actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not, by itself, establish the existence of the claimed agreement. If they acted similarly but independently of

one another, without any agreement among them, then the claimed agreement would not exist.

In determining whether an agreement between one or more competitors has been proved, you must view the evidence as a whole, and not piecemeal. In particular, you should consider all of the evidence, as a whole, in determining whether any similarity or identity of prices resulted from competitors' independent judgment freely competing in the ODD market, or whether it resulted from an agreement among them.

Similarly, the fact that ODD sellers exchanged price information does not necessarily establish an agreement to fix or stabilize prices. There may be other, legitimate reasons why competitors might exchange price information. On the other hand, if you find that price information was exchanged, and defendants offer no reasonable explanation as to why prices were exchanged, you may consider that in determining whether the prices were being exchanged as part of a price-fixing agreement, together with all the other evidence relevant to the existence, or nonexistence, of such an agreement.

Instruction No. 7

## KNOWING PARTICIPATION

Before you can find that defendants participated in an agreement among sellers to fix or stabilize ODD prices, the evidence must show that defendants knowingly joined in the price-fixing agreement at its inception, or at some later time, with the intent to further the purpose of the price-fixing agreement.

To act knowingly means to participate deliberately, and not because of mistake, accident, or other innocent reason. A person may participate in an agreement without full knowledge of all the details of the entire agreement among competitors, the identity of all participants, or the parts they played. Knowledge of the essential nature of the plan is enough. On the other hand, a person who has no knowledge of a price-fixing agreement, but happens to act in some way to help the agreement succeed, does not thereby become a participant.

A competitor who knowingly joins an existing price-fixing agreement, or who participates in only a part of the agreement with knowledge of the overall agreement, is just as responsible as if it had been one of those competitors who formed or began the agreement and participated in every part of it.

In determining whether defendants participated in an ODD price-fixing agreement, you should consider only the evidence about defendants' statements and conduct, including any evidence of defendants' knowledge and participation in

13

the events involved, and any other evidence of defendants' participation in an agreement.

You may not find that defendants participated in a price-fixing agreement based only on their association with, or knowledge of, price-fixing, but that is a factor you may consider in determining whether defendants participated.

If you find that a price-fixing agreement existed, then the acts and the statements of the participants in the price-fixing agreement are binding on all those you find were participants.

If you find that defendants participated in a price-fixing agreement, it is not a defense that defendants acted with good motives, that they thought their conduct was legal, or that their conduct may have had some good results.

Nor does it matter that agreed-upon prices were reasonable. If you find that a price-fixing agreement existed, it does not matter whether the prices agreed upon were high or low, or reasonable or unreasonable.

Likewise, it does not matter that ODD sellers competed in some respects, or failed to eliminate price competition among all of them. Nor does it matter that the price-fixing agreement did not extend to all products sold by the participant competitors, or did not affect all ODD customers or transactions. And it does not matter whether the participants stuck to their price-fixing agreement on every occasion.

Instruction No. 8

## CONSIDER DAMAGES ONLY IF NECESSARY

If you have determined that defendants participated in a price-fixing agreement among competing ODD sellers that caused some injury to plaintiff, then you must determine the amount of damages to award to plaintiff. The proper way to calculate those damages is to determine the difference between the amounts actually paid by plaintiff for ODDs at the fixed or stabilized price, and the amounts plaintiff would have paid for the same volume of ODDs, had there been no agreement among competitors to fix or stabilize ODD prices. This is referred to as the overcharge.

Instruction No. 9

## JOINT AND SEVERAL LIABILITY

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

If you find that plaintiff has proven the existence of the alleged conspiracy, that one or both of the defendants participated in the conspiracy, and that plaintiff is entitled to recover damages based on the other instructions in this case, then defendants would be liable for all damages caused by the conspiracy.

Instruction No. 10

## JURY DELIBERATIONS

It will soon be your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to reexamine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

## INTERROGATORIES

## Conspiracy to Fix Prices by Quanta Storage, Inc.

## Question No. 1

Did plaintiff prove, by a preponderance of the evidence, that Quanta Storage, Inc. participated in a conspiracy to fix, raise, maintain, and stabilize the prices of optical disc drives?

Yes _____                    No _____

If you answer "Yes," go to Question No. 2. If you answer "No," go forward to the section titled "Conspiracy to Fix Prices by Quanta Storage America, Inc."

## Question No. 2

Did plaintiff prove, by a preponderance of the evidence, that Quanta Storage, Inc. knowingly, voluntarily, and intentionally participated in the conspiracy?

Yes _____                    No _____

If you answer "Yes," go to Question No. 3. If you answer "No," go forward to the section titled "Conspiracy to Fix Prices by Quanta Storage America, Inc."

## Question No. 3

Did plaintiff prove, by a preponderance of the evidence, that it suffered an injury to its business or property as a result of the conspiracy?

Yes _____                    No _____

Now proceed to answer the following questions regarding Quanta Storage America, Inc.

**Conspiracy to Fix Prices by Quanta Storage America, Inc.**

**Question No. 4**

Did plaintiff prove, by a preponderance of the evidence, that Quanta Storage America, Inc. participated in a conspiracy to fix, raise, maintain, and stabilize the prices of optical disc drives?

Yes _____                   No _____

If you answer "Yes," go to Question No. 5. If you answer "No," stop and do not answer any further questions.

**Question No. 5**

Did plaintiff prove, by a preponderance of the evidence, that Quanta Storage America, Inc. knowingly, voluntarily, and intentionally participated in the conspiracy?

Yes _____                   No _____

If you answer "Yes," go to Question No. 6. If you answer "No," stop and do not answer any further questions.

**Question No. 6**

Did plaintiff prove, by a preponderance of the evidence, that it suffered an injury to its business or property as a result of the conspiracy?

Yes _____                   No _____

If your answer to either Question 3 or Question 6 was "Yes," answer Question No. 7. Otherwise, stop and do not answer any further questions.

## **Damages**

## **Question No. 7**

What is the amount of the overcharge that plaintiff paid as a result of the conspiracy to fix, raise, maintain, and stabilize the price of optical disc drives?

Answer in dollars and cents, if any.          $ _____

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Hewlett-Packard Company, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civ. A. No. 4:18-00762 |
| | § | |
| Quanta Storage, Inc. and | § | |
| Quanta Storage America, Inc. | § | |
| | § | |
| *Defendants*. | § | |

---

## CERTIFICATE

---

We the jury return the foregoing as our unanimous verdict.

_____
Foreperson

_____
Date